# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERIN LEHR,**<br><br>　　　　**Plaintiff**<br><br>　　v.<br><br>**SIERRA AMBULANCE SERVICE, a California corporation, and DOES 1-50, inclusive,**<br><br>　　　　**Defendant** | CASE NO. 1:18-CV-831 AWI BAM<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES**<br><br>(Doc. No. 13) |

　　This is an employment civil rights dispute between Plaintiff Erin Lehr ("Lehr") and her former employer, Sierra Ambulance Service ("SAS"). Lehr alleges that SAS committed wrongful termination in violation of public policy, violated four separate sections of California Government Code § 12940 et seq. (the Fair Employment and Housing Act ("FEHA")), and violated California Business & Professions Code § 17000 et. seq. (the Unfair Competition Law ("UCL"). SAS removed this matter from the Madera County Superior Court on June 15, 2018 on the basis federal question jurisdiction through the "complete preemption" effect of 29 U.S.C. § 185(a) of the Labor Management Relations Act ("LMRA § 301"). Currently before the Court is Lehr's motion to remand and request for attorney's fees. For the reasons that follow, the motion will be granted, fees will be awarded, and this case will be remanded back to the Madera County Superior Court forthwith.

# BACKGROUND[1]

In 2009, Lehr began her employment with SAS as a part-time emergency medical technician.

In 2012, Lehr applied for but was denied a full time position. Although Lehr was the most qualified applicant, SAS retaliated against Lehr because her husband, who had also been an employee with SAS, had successfully appealed a termination in 2011.[2] Later in 2012, the person hired for the full time position quit and SAS was forced to hire Lehr full time.

On August 29, 2016, Lehr was injured and required a temporary medical leave of absence. Lehr submitted the appropriate paperwork to SAS. Lehr had never received any written warnings or negative performance reviews and was a model employee. Despite this, SAS did not give Lehr the opportunity to return from her temporary disability and terminated her on August 9, 2017. The termination was retaliatory for Lehr taking a medical leave of absence. SAS terminated Lehr without engaging in an interactive process and without providing a reasonable accommodation.

Lehr's employment was governed by a collective bargaining agreement ("CBA") between Lehr's union and SAS. See Guzman Dec. ¶ 3. On August 16, 2017, Lehr filed a grievance in conformity with the CBA and grieved her termination "while being on a medical [leave of absence]." Id. at ¶ 5. Prior to her termination, SAS offered Lehr the opportunity to return to work, but without seniority pursuant to the CBA. See id. at ¶ 6. Lehr did not attend the hearing with respect to the first stage of the grievance procedure and later withdrew the grievance without prejudice and without accepting the offer to return to work. See id. at ¶ 7.

# LEGAL FRAMEWORK

The removal statute (28 U.S.C. § 1441) is strictly construed against removal jurisdiction. Hansen v. Group Healthcare Coop., 902 F.3d 1051, 1057 (9th Cir. 2018); Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010). It is presumed that a case lies

---
[1] The background is derived from the allegations in Lehr's Complaint and from a declaration submitted in as part of SAS's opposition.

[2] Lehr's husband was nevertheless terminated for pretextual reasons by SAS shortly after his successful appeal.

outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction. Geographic Expeditions, 599 F.3d at 1106-07; Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009). "The strong presumption against removal jurisdiction" means that "the court resolves all ambiguity in favor of remand to state court." Hunter, 582 F.3d at 1042; Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). That is, federal jurisdiction over a removed case "must be rejected if there is any doubt as to the right of removal in the first instance." Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566. "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); Corona-Contreras v. Gruel, 857 F.3d 1025, 1028 (9th Cir. 2017). Remand under 28 U.S.C. § 1447(c) "is mandatory, not discretionary," Bruns v. NCUA, 122 F.3d 1251, 1257 (9th Cir. 1997), so a district court "must remand if [it] lacks jurisdiction." Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Rainero v. Archcon Corp., 844 F.3d 832, 837 (9th Cir. 2016). Under the "well-pleaded complaint" rule, courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the defendant may interpose." California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000). "[A] case may not be removed on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183 (9th Cir. 2002). The "artful pleading doctrine" is a corollary to the well-pleaded complaint rule, and prohibits a plaintiff from avoiding federal jurisdiction "by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." Lippitt v. Raymond James Fin. Serv., 340 F.3d 1033, 1041 (9th Cir. 2003). "Complete preemption," which refers to federal laws that preempt state-law causes of action and substitutes an exclusive federal

3

cause of action in its place, is the most common method of "artful pleading." Hansen., 902 F.3d 1051, 1057 (9th Cir. 2018). A state law claim that is "completely preempted" is considered from its inception a federal claim, and therefore arises under federal law. Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005). Section 301 of the LMRA "completely preempts" state law claims. See Hansen, 902 F.3d at 1058; Valles, 410 F.3d at 1076.

## **PLAINTIFF'S MOTION**

*Plaintiff's Arguments*

Lehr argues that none of her claims provide a basis for removal under LMRA § 301. Rather, each of the claims arise from an independent state law. The FEHA protections are unwaivable, and what is alleged is a refusal to provide medical leave and retaliation for requesting it. The Ninth Circuit has recognized on numerous occasions that FEHA claims are not preempted by LMRA § 301. Because there is no reasonable basis for removable, remanded is required and Defendants should pay attorney's fees of $7,200.

In reply, Lehr argues that she is not complaining about or raising any issues regarding seniority. Rather, her claims are bout a wrongful termination and retaliation regarding disability/medical leave. As part of her reply, Lehr submitted a declaration in which she explains she filed a grievance with her union about the termination because she thought that all wrongful terminations were governed by the CBA, she did not grieve her seniority, and she merely included the 2012 failure to promote allegations to show a pattern of retaliation by SAS. See Lehr Dec. ¶¶ 2-4. Further, Lehr's opposition states that the Complaint's reference to the 2012 failure to promote is not an attempt to complain about the promotion, rather it is evidence to help show that a reasonable person in Lehr's position would not accept an offer of reinstatement.

*Defendant's Opposition*

SAS argues that each of Lehr's claims requires the interpretation of the CBA and thus, are completely preempted by LMRA § 301. Lehr's employment was governed by the CBA, which included a three part grievance procedure. Lehr exercised that procedure by submitting a grievance regarding her termination. However, Lehr withdrew her grievance and did not complete

4

the process. Further, she refused an offer to return to work, but without seniority, as required by the CBA. Article 9 of the CBA contains specific provisions governing seniority, disability and personal leave, and licensing and qualifications. These aspects of the CBA are intertwined with Lehr's allegations. Lehr was offered a reasonable accommodation through the opportunity to return to work with the same benefits and pay, but without seniority. Lehr's claims cannot be adjudicated without application and interpretation of Article 9. Because the seniority policy in Article 9 is inextricably intertwined with each of Lehr's claims, this is not a case in which the CBA will merely be referenced. Further, even if the Court remands this matter, attorney's fees are not appropriate because there is an objectively reasonable basis for arguing that complete preemption applies.

*Legal Standard*

Under § 301 of the LMRA, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a); Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). "Although the text of § 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements . . . [as well as] cases the resolution of which 'is substantially dependent upon analysis of the terms of [a collective bargaining agreement].'" Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005). "The Supreme Court has held in a variety of contexts that § 301 acts to preempt state law claims that substantially depend on the [collective bargaining agreement], that are premised on negotiable or waivable state law duties the content of which have been covered by the [collective bargaining agreement], or that seek to enforce the terms of the CBA, for example, breach of contract claims." Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002).

The Ninth Circuit has established a two part test for determining whether a state law claim is preempted by § 301. Dent v. NFL, 902 F.3d 1109, 1116 (9th Cir. 2018); McCray v. Marriott Hotel Servs., 902 F.3d 1005, 1010 (9th Cir. 2018). First, courts ask whether the cause of action

involves rights conferred upon an employee by virtue of state law, not by a collective bargaining agreement. Dent, 902 F.3d at 1116; McCray, 902 F.3d at 1010. If the cause of action involves rights conferred solely by a collective bargaining agreement, then the claim is preempted and the analysis ends. Dent, 902 F.3d at 1116; McCray, 902 F.3d at 1010. Second, if the right exists independently of the CBA, courts ask whether litigating the state law claim requires interpretation of a collective bargaining agreement, i.e. the claim is nevertheless substantially dependent on analysis of a collective-bargaining agreement. See Dent, 903 F.3d at 1116; McCray, 902 F.3d at 1010. Claims that require the interpretation of a collective bargaining agreement are preempted. See Dent, 903 F.3d at 1116; McCray, 902 F.3d at 1010. From this test, "state law causes of action are preempted if they are either based upon the collective bargaining agreement or dependent upon an interpretation of the agreement." Ramirez v. Fox Television Station, 998 F.2d 743, 748 (9th Cir. 1992); see McCray, 902 F.3d at 1010; Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9t h Cir. 2001) (en banc). Under the second step, "interpretation" is construed narrowly. Dent, 903 F.3d at 1116. If there is only a hypothetical connection to a collective bargaining agreement and a state law claim, or if a collective bargaining agreement will only be considered, referred to, or simply applied, then the collective bargaining agreement will not be "interpreted." Id. Rather, "the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim." Id. That is, resolution of a plaintiff's claim must require interpretation of a provision of a collective bargaining agreement, it is not enough that a collective bargaining agreement is potentially relevant to the state law claims without any guarantee that interpretation or direct reliance will actually occur. Id. at 1116-17. Purely factual questions that pertain to the conduct of the employee and the conduct and motivation of the employer will not require an interpretation of a collective bargaining agreement. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988); Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1408 (9th Cir. 1992); see also Dent, 903 F.3d at 1017. When LMRA § 301 preemption applies, the state law claim is either treated as a § 301 claim for breach of the collective bargaining agreement or dismissed. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); Stone v. Writer's Guild of Am. West, 101 F.3d 1312, 1314 (9th Cir. 1996).

*Discussion*

1. Complete Preemption

   a. FEHA Claims

With respect to Lehr's four FEHA claims, the Ninth Circuit has "a long line" of cases "holding that FEHA employment discrimination claims are not *ipso facto* preempted by § 301 of the LMRA." Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203-04 (9th Cir. 2007) (and cases cited therein); see also Brown v. Brotman Med. Ctr., 571 F. App'x 572, 574-75 (9th Cir. 2014). There does not appear to be anything about Lehr's FEHA claims that would take them outside of this long line.

SAS has pointed the Court to Article 9 of the CBA. That section is entitled "Seniority," is eight pages long, and has thirteen paragraphs and numerous subparagraphs. See Doc. No. 1-2 at ECF p.21. However, Lehr's FEHA claims are for disability discrimination (§ 12940(a)), retaliation (§ 12940(h)), failure to accommodate (§ 12940(m)), and failure to engage in an interactive process (§ 12940(n)). Lehr's temporary medical condition and/or taking and requesting medical leave are what underlie each of these causes of action. See Complaint ¶¶ 31, 32, 33, 39, 40, 41, 47, 48, 49, 55, 56, 57. Nowhere under these causes of action, or anywhere in the complaint for that matter, does Lehr even mention seniority. The issue of seniority appears to be based only on SAS's offer of a return to work without seniority as a reasonable accommodation. SAS's offer of a return to work is before the Court not because of allegations made in the Complaint, but from the opposition declaration of an SAS employee. Thus, the offer to return to work, and any potential issues regarding seniority, are not part of Lehr's pled causes of action. Rather, the offer and seniority are only part of a potential defense raised by SAS that would most clearly affect the § 12940(m) reasonable accommodation claim.[3] "[A] defense based on a CBA does not give rise to preemption." Dent, 903 F.3d at 1016; see Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2005); Cramer, 255 F.3d at 690.

---

[3] SAS claims that Article 9 would have to be interpreted with respect to each FEHA claim. However, SAS does not explain why this is the case. It is possible that Article 9 may affect what accommodations could have been available for purposes of the § 12940(n) claim. See Nealy v. City of Santa Monica, 234 Cal.App.4th 359, 379 (2015) (plaintiff must identify an available accommodation at the time of an interactive practice). But as to the § 12940(h) and § 12940(a) claims, SAS's motivation would be at issue, not the interpretation of Article 9. See Lingle, 486 U.S. at 407.

7

1    SAS argues that *U.S. Airways v. Barnett*, 535 U.S. 391, 403 (2002) shows that the CBA in
2    this case must be considered and interpreted.  SAS argues that it offered Lehr a return to work
3    without seniority because the CBA required the loss of seniority.  See Doc. No. 15 at 3:26-28.
4    SAS then discusses *Barnett*.  SAS explains that *Barnett* injured his back, was placed in a
5    physically less demanding position, but through application of a seniority system, more senior
6    employees were about to out-bid Barnett for the position.  See id. at 3:28-4:3.  The employer
7    refused to allow Barnett to remain in the position because that would violate the seniority rules.
8    See id. at 4:3-5.  According to SAS, the "Supreme Court held that ordinarily, a proposed
9    accommodation which violates the rules of a seniority system is unreasonable but since the case
10   before the Supreme Court required the interpretation and application of binding CBA terms, the
11   seniority system set forth in the CBA controlled.  Id. at 403."  Id. at 4:5-8.  SAS then argues that
12   Article 9 of the CBA in this case contains specific provisions governing seniority,
13   disability/personal leave, and licensing/qualifications, which all intertwine with Lehr's claims.
14   See id. at 4:9-11.[4]  SAS then argues that Article 9 of the CBA must be interpreted and applied, just
15   like *Barnett*.  See id. at 4:11-18.  The Court cannot agree with SAS.

16       SAS has not accurately described *Barnett*.  *Barnett* was an American's with Disabilities
17   Act ("ADA") case about a failure to accommodate.  See Barnett, 535 U.S. at 393, 395-96, 402.
18   The issue presented was whether an assignment to a position that conflicts with a seniority system
19   could constitute a reasonable accommodation.  See id.  The Supreme Court responded that
20   ordinarily, an assignment that would violate the rules of a seniority system is not a reasonable
21   accommodation.  See id. at 394, 402-05.  However, an ADA plaintiff may present evidence of
22   some "special circumstance" that would make an exception to the seniority system reasonable.
23   See id.  Importantly, *Barnett* was not an LMRA case, and no part of the LMRA was cited or
24   discussed in any way.  Contrary to SAS's express representations, there was no collective
25   bargaining agreement in *Barnett*, rather the seniority system was unilaterally imposed by the
26   employer.  See id. at 404.  Moreover, no terms of any collective bargaining agreement were

---

[4] The Court notes that SAS fails to identify the paragraphs and subparagraphs within Article 9 that address disability/personal leave and licensing/qualifications.

analyzed or reviewed, *Barnett* did not hold the terms of a collective bargaining agreement controlled, and *Barnett* did not even resolve the case. See id. at 402-06. *Barnett* answered a legal question concerning conflicts between a *seniority system* (not a collective bargaining agreement) and a possible disability accommodation. Once it answered that question, the Supreme Court remanded the matter to the lower courts so that the parties had the opportunity to seek summary judgment in light of the new legal principles announced. See id. at 406. The Court is unaware of any case that has applied *Barnett* to LMRA issues. This Court will not be the first. Because *Barnett* is clearly an ADA case, and does not attempt to address any LMRA § 301 issues, *Barnett* does not control.

In sum, SAS has failed to show that any provision of the CBA, including any sections of Article 9, will need to be "interpreted" based on the nature of Lehr's claims. See Dent, 903 F.3d at 1016. Thus, Lehr's FEHA claims are not preempted by LMRA § 301. See id.; Detabali, 482 F.3d at 1203-04.

      b.  Wrongful Discharge In Violation of Public Policy

"A claim that a discharge violates public policy 'is preempted . . . if it is not based on any genuine state public policy, or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship.'" Jackson v. S. Cal. Gas Co., 881 F.2d 638, 643-44 (9th Cir. 1989); (quoting Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 1002 (9th Cir. 1987)). "[A] claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." Id. at 644 (quoting Young, 830 F.2d at 1001). California has a genuine public policy against discrimination, thus, "FEHA's provisions against discrimination may provide the policy basis for a claim for wrongful termination in violation of public policy." See Trop v. Sony Pictures Entertainment, Inc., 129 Cal.App.4th 1333, 1344 (2005); Phillips v. St. Mary's Reg'l Med. Ctr., 96 Cal.App.4th 218, 227 (2002).

Here, Lehr's wrongful discharge in violation of public policy claim is grounded on the policy against discrimination as reflected in FEHA. See Complaint ¶ 22. FEHA represents a genuine public policy, see Trop, 129 Cal.App.4th at 1344, and it exists independently of the CBA.

See Ramirez, 998 F.2d at 748. As discussed above, there has been no showing that an interpretation of the CBA inheres to Lehr's FEHA claims. Since the wrongful termination claim does not depend on or require the interpretation of any CBA provisions, see Dent, 903 F.3d at 1016, there is no "significant threat" to the collective bargaining process or the CBA. See Jackson, 881 F.2d at 643-44. For essentially the same reasons that apply to Lehr's FEHA claims, her wrongful termination in violation of public policy claim is also not preempted by LMRA § 301.

### c. UCL

A UCL claim based on "unlawful" conduct will "rise or fall depending on the state of the antecedent substantive causes of action." Krantz v. BT Visual Images, L.L.C., 89 Cal.App.4th 164, 178 (2001); see Fresno Motors, Ltd. Liab. Co. v. Mercedes Benz USA, Ltd. Liab. Co., 771 F.3d 1119, 1135 (9th Cir. 2014); Vargas v. JP Morgan Chase Bank, N.A., 30 F.Supp.3d 945, 953 (C.D. Cal. 2014).

Lehr's UCL claim is based on the "unlawful" conduct of violating FEHA.[5] See Complaint ¶ 61; see also In re Vaccine Cases, 134 Cal.App.4th 438, 457 (2005) (noting that an allegation of a statutory violation is an allegation of "unlawful" conduct, rather than "unfair" or deceptive conduct). As discussed above, SAS has not demonstrated that any of Lehr's FEHA claims are preempted by LMRA § 301 because an interpretation of the CBA is not a necessary part of Lehr's claims. Because Lehr's FEHA claims are not preempted, neither is Lehr's UCL claim. See Vasserman v. Henry Mayo Newhall Mem. Hosp., 65 F.Supp.3d 932, 963-64 (C.D. Cal. 2014).

### d. Conclusion

Without LMRA § 301 complete preemption, there is no federal question jurisdiction. No other basis for jurisdiction has been identified. Therefore, this Court is without subject matter jurisdiction and must remand this case pursuant to 28 U.S.C. § 1447(c). See Bruns, 122 F.3d at 1257.

---

[5] The UCL broadly proscribes the use of any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code. § 17200; Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th Cir. 2016). "The UCL operates as a three-pronged statute: 'Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" Beaver, 816 F.3d at 1177 (citations omitted).

1. 2. Attorney's Fees

    a. Objectively Reasonable Removal

The Court may require payment of attorneys' fees and costs incurred as a result of an improper removal. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); GranCare, LLC v. Thrower, 889 F.3d 543, 552 (9th Cir. 2018). "Removal is not objectively reasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" GranCare, 889 F.3d at 552 (quoting Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008)).

Here, the Court finds that removal was not objectively reasonable. First, the law regarding FEHA cases and LMRA § 301 reveals that there is a general rule that FEHA claims are not preempted. The Ninth Circuit has reversed decisions in which FEHA claims were held to be preempted, but the Court is not aware of any Ninth Circuit case that has affirmed LMRA § 301 preemption of a FEHA claim. It is very conspicuous that SAS's briefing cites no cases, either from the Ninth Circuit or California district courts, in which a FEHA claim was held to be properly preempted. There is nothing about this case that warrants a different result from the general rule. Second, the issue of seniority is not part of Lehr's complaint or her causes of action. Article 9's seniority provisions have been injected into the case by SAS, and Article 9's relevance is not clear outside of a possible defense to Lehr's § 12940(m) claim. It is well established that reliance on a collective bargaining agreement as a defense will not lead to the complete preemption of the related cause of action. Finally, SAS relied heavily on *Barnett*, but its reliance was misplaced. SAS mischaracterized *Barnett*, including a representation that a collective bargaining agreement was at issue and that a collective bargaining agreement was the basis for resolving the case. As explained above, both representations are false. The reliance on an ADA case that does not mention LMRA § 301 and that does not involve a collective bargaining agreement is unreasonable. For these reasons, SAS's removal was not objectively reasonable, and attorney's fees will be awarded.

b.      Amount of Fees

Under a fee shifting statute, like § 1447(c), courts calculate fee awards using the "lodestar method." See Sankary v. Ringgold, 601 F. App'x 529, 530 (9th Cir. 2015); Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003); Albion Pac. Prop. Res., LLC v. Seligman, 329 F.Supp.2d 1163, 1166 (N.D. Cal. 2004). Under the lodestar method, courts multiply the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009). "The applicant has an initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." United States v. $28,000.00 in United States Currency, 802 F.3d 1100, 1105 (9th Cir. 2015). With respect to a reasonable hourly rate, the moving party must show that the requested rate is in line with those prevailing in the community (generally the forum in which the district court sits) for similar services by lawyers of reasonably comparable skill, experience and reputation. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110 (9th Cir. 2014). With respect to expended hours, the moving party "should provide documentary evidence to the court concerning the number of hours spent," and hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. McCown, 565 F.3d at 1102. "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended," even "minimal" descriptions that establish that the time was spent on matters on which the district court may award fees is sufficient. Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004). Counsel need only "identify the general subject matter of [their] time expenditures." Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000). However, where "the documentation is inadequate, the district is free to reduce an applicant's fee award accordingly." Id.

            (1)     Reasonable Hourly Rate

Lehr's counsel declares that he has been licensed since 2015 and that his regular billing rate is $400 per hour. However, Lehr's counsel practices in Los Angeles, which is not the relevant legal community. The relevant legal community is the Fresno Division of the Eastern District of California. See Chaudhry, 751 F.3d at 1110. In the Fresno Division, attorneys with experience of

between three and fifteen years are awarded between $250 and $350 per hour.  See <u>Kolb v. Telling</u>, 2018 U.S. Dist. LEXIS 88475, *29 (E.D. Cal. May 25, 2018).  Because Lehr's counsel has three years of experience, the reasonable hourly rate will be set at $250 per hour.

### (2)     Reasonable Hours Expended

Lehr's counsel states that he spent 10.2 hours researching the motion, 2.8 hours drafting the motion, and anticipates spending 5 hours reviewing the opposition and preparing a reply.

The motion to remand consisted of thirteen pages, including a notice and proof of service.  Of these thirteen pages, approximately eight pages consist of substantive analysis and briefing.  Additionally, Lehr's counsel prepared a two page fee declaration that contained minimal information.  The Court finds that 2.8 hours to draft the motion to remand is efficient and that no deductions will occur.  However, considering the nature of the issues involved, the Court finds that 10.2 hours of research is slightly excessive.  The Court finds that a reduction of 1 hour from the research time is reasonable under the circumstances.  <u>Cf.</u> <u>W.H. Breshears, Inc. v. Delaware N. Cos. Parks & Resorts</u>, 2015 U.S. Dist. LEXIS 165456, *18 (E.D. Cal. Nov. 29, 2015) (finding that 12 hours to prepare a remand motion was reasonable).

With respect to the 5 hour estimate to prepare the reply and review the opposition, the Court will not award these hours.  Although Lehr's counsel obviously expended time to prepare the reply, no additional information was presented to the Court regarding the time expended.  The Court has no idea how much time was actually spent to complete the reply, nor does the Court know how that time was spent.  Without additional information, the Court will not speculate as to the amount of time that was reasonably expended.  See <u>W.H. Breshears</u>, 2015 U.S. Dist. LEXIS 16456 at *18-*20; <u>see also</u> <u>Tise</u>, 234 F.3d at 427 (holding that where "the documentation is inadequate, the district is free to reduce an applicant's fee award accordingly.").

In sum, the Court finds that 12 hours was reasonably expended in total on the fee motion.

### (3)     Total Fee Award

With a figure of 12 hours reasonably expended, and a rate of $250 per hour, a fee of $3,000 results.  No additional modifiers or considerations will affect this figure.  Therefore, the Court will award Lehr $3,000 in attorney's fees.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand (Doc. No. 13) is GRANTED;
2. Pursuant to 28 U.S.C. § 1447(c), because the Court lacks subject matter jurisdiction, this case is REMANDED forthwith to the Madera County Superior Court;
3. Pursuant to 28 U.S.C. § 1447(c), Plaintiff is awarded $3,000 in attorney's fees against Defendant; and
4. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated: December 7, 2018

_____
SENIOR DISTRICT JUDGE